## Hutchinson *versus* Pittsburg.

1. The councils of Pittsburg are authorized to improve streets and collect the cost by "assessment of an equal sum per front foot" on the properties abutting on the portions of the streets thus improved, which should be a lien. They ordained the grading of a street from M. to B. streets, and a contract was made for that distance; it appearing that part had been graded, the grading under the supervision of the engineer was done only between P. and C. streets, part of the distance ordained. *Held*, that the assessment was to be on property between P. and C. streets.

2. Notice of assessment is to be given that the parties may have errors corrected at the engineer's office, and the claim be paid to the treasurer. *Held*, that objections to the assessment not having been made under the notice could not be made to a scire facias on the lien.

3. The contract being between the city and contractor, and the city adopting the action of its officers, an owner could not object that the whole was not graded.

4. The assessment was on a whole lot, which had been divided into smaller lots by the owners, but was not on the city plan. *Held*, that the assessment was properly made on the entire lot.

5. An owner paid the *contractor* part of the cost; he afterwards assigned his claim, for value, without notice to the assignee or the city of the payment. *Held*, that the city to the use of the assignee could recover the whole amount.

November 8th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 198 and 199, to October and November Term 1872.

Two writs of scire facias, on municipal claims, were issued on the 5th of November 1869, by the City of Pittsburg against David Hutchinson.

The claims were No. 29 and No. 30, and were for grading Bluff street.

No. 29 was against a lot of ground on the north side of Bluff

street, and fronting on said street 236¾ feet, running back about 236 feet to Vickroy street.

No. 30 was against a lot of ground on the north side of Bluff street, fronting on said street 159½ feet, and running back about 187 feet to Vickroy street.

The Act of January 6th 1864, sect. 6, authorized the councils of Pittsburg to grade, &c., any street or parts thereof, and collect the cost from the owners of property bounding or abutting on the portions of streets, &c., thus improved, by an assessment of an equal sum per foot front of said properties. When the grading shall have been done the regulator shall make an assessment of the cost, and give notice of the assessment by publication ten days, that parties may have errors or mistakes corrected, and corrections having been made, he shall hand the same to the treasurer.

In pursuance of this act, the councils of Pittsburg, on the 21st of August 1868, ordained " That the city engineer be instructed to advertise for proposals for the partial grading of Bluff street, from Miltenberger to Boyd street, and let the same in accordance with ordinances providing therefor."

By virtue of this ordinance the city engineer, on the 10th of October 1868, entered into a contract with Patrick Bradley, by which Bradley agreed to furnish all the materials and partially grade Bluff street, from Boyd street to Miltenberger street, for which he was to be paid " from the moneys to be collected for the cost thereof, in accordance with Acts of Assembly and Ordinance of Councils," 70 cents for each cubic yard of grading and filling."

The plaintiff gave evidence by the city engineer that the work was done under the contract, the cost assessed according to the feet graded, and the notice of the assessment published. The assessment was between Cooper and Pride streets, two intermediate streets between Miltenberger and Boyd streets. There was no grading east of Pride street, or west of Cooper street, that having previously been brought to grade. The assessment was made on the part of the street in which the work was done.

The defendant gave evidence that he had graded part of the street west of Stevenson street and opposite his land, but not between Pride and Cooper streets.

His property is bounded by Stevenson, Bluff and Vickroy streets, Stevenson crossing Bluff and Vickroy streets; his lots, which are charged with the claim, are parts of the above-stated property; he held the lots under different deeds from several persons. He gave evidence that he had paid Bradley directly $427, on account of grading. Lot No. 30 was divided by a former owner into several lots with different numbers, some of which smaller lots did not front on Bluff street.

The plaintiff, in rebuttal, gave evidence that after notice of the assessment the defendant came to the regulator's office and objected

22 P. F. SMITH—21

[Hutchinson *v.* Pittsburg.]

to the assessment, because it had not been made on all the property between the streets named in the ordinance, Boyd and Miltenberger, but made no other objection.

Also evidence that Bradley had assigned his claim under the contract to M. Munhall & Co., who took it without any knowledge that the defendant had paid Bradley anything on account of it. The city officers had no knowledge of the payment to Bradley.

The plaintiff's points were :—

1. If no work was done east of Pride or west of Cooper street, there could be no assessments but between those two streets, and they were properly limited to property between them, notwithstanding the ordinance directed the grading to be done between Boyd and Miltenberger streets.

2, 3. Cost of grading was properly assessed equally per foot on the property between Pride and Cooper streets, without regard to the amount of work on front of each owner's property, or if there had been no work done in front of some lots.

4. The fact that a portion of defendant's property is divided by a plan into small lots does not limit the lien to the lots abutting on the street, but is a valid lien on all his property abutting on the street.

5. The fact that property not subject to the lien has been included in the property described in the lien is not a defence to the scire facias, the court having power to restrain the execution to the property properly chargeable.

6, 8. If property not chargeable is included in the lien, the defendant cannot now take advantage of the error, notice having been given of the assessment and the time for correcting the errors.

7. Payments to Bradley without authority are not payments, or set off the city's claim.

These points were affirmed.

The defendant's points were :—

1. The lien No. 30 having been filed against lots 39 (and fourteen others specified), and as lots No. 27 (and nine others specified), do not front on Bluff street, the lien cannot be maintained against the last-mentioned lots.

2. As lien 30 includes 22 and 23, which were never owned by the defendant, and neither fronts on Bluff street, there can be no recovery as to these two lots.

3. The city was bound to give the amount of assessment on each separate lot, and a lien in gross against a large number of lots of different size or feet front, and held under different conveyances cannot be sustained.

4, 5. If Hutchinson had graded in front of his property at his own expense before Bradley commenced, he is not liable to be assessed.

6. The payment to Bradley while the work was in progress, on

account of it, was a good payment, and the defendant is entitled to credit for it.

7. The contract having been awarded for grading between Boyd and Miltenberger streets, the action of the officers of the city in confining the work to a portion of that distance was illegal, and the assessment under a part execution of the ordinance is void.

These points were refused.

The jury found a special verdict, viz. :—

1. That the assessments sought to be recovered in these actions were levied upon the property-holders between Pride and Boyd streets, and not between Miltenberger and Boyd streets, and that no grading was done east of Pride street.

2. That the amount in principal and interest is $373.22 in No. 29, and $250.97 in No. 30.

3. That the amount of the assessment, in case the same had been levied on the property-holders between Miltenberger and Boyd streets, would be $252.45 in No. 29, and $169.97 in No. 30.

4. That the defendant graded his property west of Stevenson street.

5. That the defendant paid Bradley, the contractor, on account of grading $427, amounting now with interest to $491.77.

6. That Bradley, on the 24th of September 1870, assigned to Munhall & Co. all his interest in the claim under his contract; they received the same for value and without notice of the payment to Bradley, and we find for the plaintiff $373.22 in No. 29, and $250.97 in No. 30, subject to the opinion of the court upon the questions of law raised by the points of the parties respectively, upon the facts as found by us. If the court shall be of opinion that the verdict should be for the defendant, or if for the plaintiff, that the same should be modified in amount, then judgment to be entered for the defendant *non obstante veredicto,* or for the plaintiff in such modified form or amount as the court on consideration of these reserved questions should think proper.

The court (Kirkpatrick, J.) entered judgment on the verdict for the plaintiff on the questions of law reserved.

The defendant took a writ of error and assigned for error :—

1, 3, 19. Entering judgment for the plaintiff on the verdict and without directing for what sum judgment should be entered.

2. Not allowing defendant credit for the amount found to have been paid by him to Bradley.

4–11. The answers to the plaintiff's points.

12–18. The answers to the defendants' points.

*J. Barton,* for plaintiff in error, cited Shaffer *v.* Pittsburg, 16 P. F. Smith 454.

*D. T. Watson* and *J. F. Slagle,* for defendant in error, cited Philadelphia *v.* Burgin, 14 Wright 539; Philadelphia *v.* Wistar, 11 Casey 427; Schenley *v.* Commonwealth, 12 Id. 29.

The opinion of the court was delivered, January 6th 1873, by

READ, C. J.—By the 6th section of the Act of 6th January 1864, the councils of Pittsburg are authorized whenever they may deem the same necessary to cause to be graded, regraded, paved, repaved, or macadamized any public street, lane or alley, or any parts thereof, and they are to levy and collect the cost of the same, from the owners of property bounding or abutting on the portions of the streets, lanes or alleys, *thus improved,* by an assessment of an equal sum per front foot of said properties; and section 7th provides, that when any grading shall have been done, the recording regulator, (now city engineer), is to make an assessment of the cost and expense thereof, "and to give notice by publication for ten days in two daily papers of said city, that the said assessment has been made, and may be seen at his office, and that the parties interested may have an opportunity of having any *errors or mistakes corrected.* After correcting any errors or mistakes that may have been discovered, he shall immediately hand over the said assessments, with a plan and description of each lot, the amount assessed thereon, and the name of the owner or owners, to the treasurer of said city."

By the 8th and 9th sections, the treasurer shall then give notice of the amount so assessed upon each property to the owner thereof, and if the same be not paid to him within thirty days from the time of said notice, it will be filed as a lien against said property, with interest, costs and fees, and if not paid within the thirty days, the treasurer shall hand over to the city solicitor (now city attorney), the assessment, with plan and description of each lot et cetera, as furnished to him as aforesaid, and the city (attorney) solicitor shall file a lien against each property for the amount of the assessment thereon remaining unpaid, with interest from the time notice for payment was given, and five per cent. additional as the solicitor's (attorney's) fee for collection.

The ordinance under which the grading in these cases was done, was passed August 31st 1868, and is as follows: "That the city engineer be, and he is hereby authorized and instructed, to advertise for proposals for the partial grading of Bluff street, from Miltenberger to Boyd streets, and to let the same in accordance with ordinances of councils providing therefor."

The city engineer having advertised for proposals, on the 31st of October 1868, contracted on behalf of the city with Patrick Bradley to do the grading at so much per cubic yard, and he entered upon his work under the supervision of the engineer. On a survey it was found all the property between Miltenberger and

Pride streets had been brought up to the grade established, and no grading was done east of Pride street, having been graded before. The grading and of course the assessment were confined to that part of Bluff street lying between Cooper and Pride streets. The assessment so made was regularly advertised, agreeably to the provisions of the 7th section, by the city engineer, who handed over the same to the city treasurer, who then gave the notice required by law, and handed over to the city attorney the said assessment, and the city attorney filed liens against the two properties of the defendant, and brought the two writs of scire facias which are now before us.

The contract is between the city and the contractor; the contractor does not complain, and the city adopts and approves the action of its officers, and the defendant cannot take advantage of the non-grading of four squares which the city found to be unnecessary and inexpedient under the circumstances. Besides the authority was to grade, not to regrade.

It was not an excess of authority, but a wise exercise of discretion in not grading the whole distance authorized, for reasons entirely satisfactory to the city. The same course of reasoning would apply to an authority to pave from one street to another street, where three squares at one end and one square at the other end were discovered to have been already paved.

The portion of the street so improved lay between Cooper and Pride streets, and by the express terms of the Act of Assembly, all properties bounding or abutting on the same are to be assessed an equal sum per front foot of the same.

But the defendant says he holds these lots by different conveyances, and the property was cut up into lots on a private plan of previous holders, and should have been so assessed. This plan was not among the city records, nor known to its officers. If there was anything in this objection, it should have been made to the city engineer, when he appeared before him in pursuance of the notice given to him. He knowing how the assessment was made, never pointed out the error or mistake now alleged, and permitted the city engineer to proceed with the assessment as made, and he is estopped to deny its correctness.

It is claimed by the defendant that he should be allowed $427, paid Patrick Bradley on 24th September 1869, on account of this grading, which with interest due on the same amounts to $491.77.

This payment was entirely unknown to the city or its officers, or to any but the parties concerned in it, and, if a valid set-off, enables Bradley, on the 24th of September 1870, to commit a fraud on Munhall & Co., by assigning his interest and claim to and under this contract to them, without notice or knowledge on their part that the defendant had paid the said Bradley the amount due him on the 24th September 1869. It is clear if this payment is

[Hutchinson *v.* Pittsburg.]

a legal one, then the same might have been practised by all the other owners of property on Bluff street, between Cooper and Pride streets, and it would have left Messrs. Munhall & Co. nothing but a dry bone.

But such is not the law. The treasurer receives all the assessments, either directly or through the city attorney, and is to pay the contractor from the moneys to be assessed and collected for the costs thereof, which in this case is for grading or filling for each cubic yard 70 cents: Schenley *v.* Commonwealth for the City of Allegheny, 12 Casey 29.

The law and the practice in Pittsburg differs entirely from the city of Philadelphia, where as in Coxe *v.* City of Philadelphia, 11 Wright 11, the ordinance "charged upon the properties in front of which the culvert passed, seventy-five cents for each lineal foot of the front of the said properties, the contractor to accept the sums so assessed and charged in part payment of his contract price, and to collect the same at his own cost; and the better to enable him so to do, to use the name of the city of Philadelphia, and employ all legal remedies or proceedings, whether of lien or otherwise, to which the said city may be competent," and in contracts for paving, it is prescribed by the ordinance authorizing them that "the condition of said contract shall be that the contractor shall collect the cost of said paving from the owners of property:" City of Philadelphia *v.* Scott, *antea*, p. 92.

Upon the whole case as presented to us the judgment in each case is affirmed.